BEDDINGFIELD, administrator, *et al. v.* OLD NATIONAL
BANK AND TRUST COMPANY.

No. 8717.   JULY 16, 1932.

178

*S. P. New* and *Burch & Daley,* for plaintiffs in error.

*G. H. Williams, T. E. Hightower,* and *E. L. Stephens,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) It seems to be well settled that in a proper case the judgment of a court of ordinary may be set aside in a court of equity having jurisdiction. *Neal* v. *Boykin,* 129 *Ga.* 676 (59 S. E. 912, 121 Am. St. R. 237); *Lester* v. *Reynolds,* 144 *Ga.* 143 (86 S. E. 321); *Wash* v. *Wash,* 145 *Ga.* 405 (2) (89 S. E. 364); *Powell* v. *McKinney,* 151 *Ga.* 803 (108 S. E. 231). However, to set aside the judgment of any court is a serious matter, and so it is regarded whenever an application is made for equitable relief for the purpose of setting aside a judgment which has been rendered in any court of law of competent jurisdiction. After a careful consideration of the entire record in this case, we are convinced that the controlling questions in this case were raised by the demurrers of the defendants to the plaintiff's petition. The judgment of a court of law can not be set aside in equity merely because a different result might have been reached in the anterior proceedings by the aid of circumstances which were not presented in the prior adjudication. The Civil Code (1910), § 4585, upon which perhaps this proceeding is predicated, declares that "The judgment of a court of competent jurisdiction may be set aside by a decree, for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the petitioner." Where a defendant negligently fails to make his defense, equity will not grant any relief. "Courts

of equity grant relief only in favor of the diligent; and this court has uniformly held that equity does not relieve from a judgment which could have been prevented but for the negligenec of the complaining party. *Rogers* v. *Kingsbury,* 22 *Ga.* 60; *Vaughn* v. *Fuller,* 23 *Ga.* 366. Negligence of a party precludes the interference of equity against the judgment. *York* v. *Clopton,* 32 *Ga.* 362; *Hill* v. *Harris,* 42 *Ga.* 412. Before a court of equity will interfere with a judgment of a court of common law, it must appear, not only that the complaining party was ignorant of the existence of a defense which he might have made to the common-law suit, but that such ignorance did not result from his own negligence, and that he is without adequate remedy at law. *Taylor* v. *Sutton,* 15 *Ga.* 103 [60 Am. D. 682]. A court of equity is loath to open a judgment in order to enable a complaining party to make a defense which could have been made at law, and will not open such a judgment where the defendant has been negligent. *Smith* v. *Phinizy,* 71 *Ga.* 641. A court of equity will not grant relief from a judgment that could have been prevented by diligence. *Smith* v. *Hornsby,* 70 *Ga.* 552." *Redwine* v. *McAfee,* 101 *Ga.* 701, 704 (29 S. E. 428). Where one is prevented alone by his own negligence from seeking the enforcement of any rights he may have, by properly presenting them to the proper court, equity will not relieve such a one from his own lack of diligence. This doctrine was recognized by this court as far back at least as *Robbins* v. *Mount,* 3 *Ga.* 74. The rule is operative also in *Rogers* v. *Kingsbury,* 22 *Ga.* 60, in which this court held generally but very distinctly that "A court of equity does not relieve a person from a judgment which he might have prevented but for his own negligence." In the *Rogers* case it was held: "The benefit of the writ of error was lost to the complainant by his own *negligence.* If he had applied to this court for a mandamus against the clerk, at the term to which this writ of error was returnable, he would have saved the return of the case. But he never applied for a mandamus at any term, and he gives no excuse for never having applied for one. We must impute it to his own negligence, therefore, that he did not get a mandamus, and consequently we must impute it to his negligence that he missed having his case heard in this court. Now a court of equity will not relieve a party from a judgment which he might have prevented, but for his own negligence." This

ruling was reiterated in *Cleckley* v. *Beall,* 37 *Ga.* 583. The controlling point in this case has been frequently passed upon by this court, and it has been invariably held that there is no relief from a judgment, even in a court of equity, that could have been prevented but for the negligence of the party. *Smith* v. *Hornsby,* 70 *Ga.* 557. These rulings were reaffirmed in *Redwine* v. *McAfee,* supra, *Graham* v. *Graham,* 137 *Ga.* 668 (74 S. E. 426), and *Garrett* v. *Thornton,* 157 *Ga.* 487 (121 S. E. 820). In *Taylor* v. *Sutton,* supra, it was held: "Before equity will interfere to grant relief against a judgment at law, three things must concur: ignorance of the defense sought to be set up at the time the judgment at law was required, without negligence being imputable to the complainant, and a want of adequate relief at law."

In *McCaulis* v. *Duval,* 69 *Ga.* 744, it was held: "A judgment may be set aside by a decree in chancery, when the party had a good defence of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part. But where to a suit on a note the defendant pleaded payment, a failure to discover or avail himself of all the testimony which he now alleges he is able to produce—arising from the carelessness and negligence of himself and his agents—furnishes no ground for equitable interference to prevent the execution of legal process. Code, §§ 3129, 3595; 63 *Ga.* 628. . . That payments on a note were made by a debtor (who, during the time of making them, resided in another State), sometimes by money order, draft, registered letter and express, sometimes by the debtor himself, and sometimes by others for him; that acknowledgments of these payments were sent to him at a point in this State; that his letters were frequently taken out by one who used his post-office box jointly with him, and who failed to deliver all his letters to him; and that he had discovered an acknowledgment of a payment, while readjusting some old furniture, deposited in an old desk which he had not used for years, furnishes no ground for equitable relief against a judgment for a balance due 'on the note, after the suit thereon has been fully tried on the issue formed by a plea of payment."

Section 4582 of the Code of 1910 declares: "Ignorance by both parties of a fact does not justify the interference of the court; nor will a mistake in judgment or opinion merely, as to the value of

property, authorize such interference." The petition in the instant case alleges that the appraisers set apart as a year's support property upon which they placed a lump value of $27,500, but which petitioner states is worth $60,000. The demurrers assailed the petition generally as well as specially upon the grounds of multifariousness and misjoinder of parties and of causes of action. One demurrer calls attention to the fact that the petition failed to show that the administrator was not under a good and solvent bond. Another, that the allegation that the estate is insolvent does not furnish any reason for a court of equity assuming jurisdiction to the exclusion of the court of ordinary, inasmuch as there is no law that an estate must be solvent in order to confer jurisdiction on the court of ordinary. The point was also raised by the general demurrer that every attack made upon the validity of the year's support could have been made before the court of ordinary before the same was set aside. Further, upon the ground that it is not proper to raise an issue after the year's support has been set aside, as to its excessiveness, that being a matter that addresses itself to the sound discretion of the appraisers and the ordinary; and inasmuch as citation was published for the period of time provided by law, the objection of excessiveness should have been urged by caveat in the court of ordinary. Another ground of the demurrer is based upon the fact that it appears from the petition that a large portion of the land set aside for a year's support has been conveyed to named grantees, who are not only proper but necessary parties defendant, as the cancellation of the year's support would affect their title. Inasmuch as there is no allegation that the administrator is not under bond, and that the bond is insufficient in amount or insufficiently secured, it is plain that the petitioner has an adequate remedy at law under the facts stated by it, to recover whatever judgment it may be entitled to, in an action at law against the administrator and the sureties upon his bond. From this it follows that it is of no concern to the petitioner (because they did not affect its interest as to its notes) what proceedings were taken in the court of ordinary, which may have rendered or tended to render the estate of the decedent insolvent. The more heinous the conduct of the administrator may have been, if shown upon a trial of this suit upon his bond, the more certain would be the liability of the security for the misconduct of the administrator. The court erred

in not sustaining the demurrer based upon the ground of misjoinder of parties and of causes of action.

If the administrator had been stricken from the petition upon this special demurrer, there would have remained the cause of action alleged against the other defendant, Mrs. M. E. Beddingfield. Was the petition sufficient to withstand the demurrers interposed by the defendant, Mrs. Beddingfield? We think not. No sufficient reason appears from the petition why the petitioner could not have raised, by caveat in the court of ordinary upon the return of the appraisers, every objection to prevent the judgment which is now urged as a ground of its invalidity. The right to the intervention of equity, as asserted by the bank, is based upon the ground that petitioner, being a resident of the State of Michigan, could not caveat the return of the appraisers, because it did not learn of the existence of the judgment until after it had been rendered. Section 4043 of the Civil Code (1910) provides that upon the return of appraisers appointed by the ordinary to set apart to the widow of a decedent the statutory year's support, the ordinary shall issue citation and publish notice, citing all persons concerned to show cause why the appraisement should not be awarded, which citation shall be published once a week for four weeks. So, as far as appears from the petition, citation was issued and published in conformity with the requirements of the act. The petitioner did not appear on the day set for the hearing and file any objections. Let it be assumed from the allegations of the petition, that petitioner would have appeared had it known that there was such a proceeding. But granting this to be true, is the fact that the Old National Bank & Trust Co. was in ignorance of the proceeding,—when even very slight diligence in watchful supervision of its interest would have given the bank knowledge of the citation,—a sufficient reason for setting aside the judgment rendered by the court of ordinary in proceedings conforming to the requirements of the Code? We think not.

The prime purpose of Code sections 4041 et seq. is to provide a suitable support and maintenance for the widow and minor children, if any, of a father who has died. The allowance is not made in a proceeding to distribute the estate, or to determine the respective priorities of any number of creditors. The proceeding has no view of the proposition as to whether the estate is solvent or insolvent, or

whether the grant of the year's support may render an estate, otherwise solvent, perfectly insolvent. The State gives the year's support a priority over all debts, even though reduced to judgment, and a priority over the taxes due to the sovereign State. The objections which may be filed under our Georgia law are very few; but as there must be support for the family at least for a period of twelve months, this matter of urgency must be given attention as speedily as possible. For this reason, the allegation of the petition that the widow requested the appraisers to set apart to her named property and of specified value can not be classed as fraudulent, because it must be presumed that the appraisers were selected by the ordinary in compliance with the requirements of the act, and acting under oath they must be presumed to have followed their own opinion as to all matters of value, instead of those suggested by the applicant, if she did suggest. And when it came to the approval of the ordinary, the same statement applies to him, as well as the statement that he was influenced by an additional statement by the widow that there remained enough property, after deducting the year's support, to leave the estate perfectly solvent. As we have already remarked, if the ordinary approved the property set apart as a matter of a year's support, the suggestion as to the insolvency of the estate was utterly immaterial. In an estate such as is referred to in the petition, the title of those creditors who were secured by deed could not be affected by the year's support, or by the general insolvency of the estate, because nothing would inure to the widow by the grant of the year's support which would defeat the right of such a creditor to recover real property itself which was pledged to him, by suit in ejectment. If the debt were secured by personalty, trover. Numbers of decisions support the proposition that the provisions of equity set forth in § 4585 do not authorize the intervention of equity to set aside the solemn judgment of a court to relieve one who complains of a position in which he placed himself by his own negligence. It is alleged in the petition in this case that petitioner loaned deceased $9,000 in two distinct loans, one of $5,000 in which Cadwell Banking Co. was the principal and deceased and others indorsers, and one of $4,000 which was the individual undertaking of the deceased. Petitioner procured a statement of the financial standing of the decedent. Petitioner had had previous transactions with the borrower, and had the advice of a bank in the same neigh-

borhood with the borrower, and loaned its money without other security than the signature of the borrower to the notes. The location of the Old National Bank & Trust Co. is approximately a thousand miles away from the borrower. It seems to us that in the exercise of very slight diligence a money-lender in Georgia, ignorant of the laws of Michigan, would at least have had an agent of some kind, if not an attorney, who would keep his principal in Georgia informed of the death of the borrower in Michigan, and that upon the death of the debtor the lender in Georgia would as soon as possible ascertain all the legal liability attaching to the estate of the dead man upon his demise. For it is a matter of common knowledge that upon the death of the owner of any kind of property, the change from life unto death gives birth to the active existence of principles of law which may be greatly different in different jurisdictions. The plaintiff in this case asks equity to relieve him from the alleged effects of its own lack of foresight and diligence in not sooner learning of the death of its debtor. If we were to hold that merely because plaintiff did not see the notice of this application for a year's support of his debtor to be taken from his estate, it should be permitted to set it aside, we would be extending a preference to citizens of other States over those of our own State. The law does not require that there should be service of the citation calling upon persons interested, if they wish to do so, to file objections to the setting apart of a year's support. Our law only requires a citation to be published once a week for four weeks in the official organ of the county of the dead man's residence, so that persons of merely ordinary diligence in the conduct of their own affairs, who may be creditors, may have opportunity of contesting the application as made and of file in the office of the ordinary. A bank situated a thousand miles away, and loaning money in Georgia, must know, and is presumed to know, that by reason of distance it has not the facilities to keep in touch with occurrences which may greatly alter the status of its loans. "A prudent man foreseeth the evil, and hideth himself." Proverbs 22:3. In our opinion, the petitioner in this case was negligent in not having removed the handicap due to its absence from this State by procuring some agency, which would have subjected it to no greater burden than that imposed on the citizens of this State, the burden of exercising ordinary diligence in the preservation of its property by the oversight of its interest.

As will be seen, the facts in the present case are very similar to those in *McCaulis* v. *Duval*, supra, from which we quoted in the beginning of this opinion. Under the showing of the defendant in that case, he could certainly have set aside the judgment, by showing payment of the sum embodied in the judgment against him. Yet, on account of his negligent manner of doing business, the court would not relieve him, even though he might have shown, had the judgment been set aside, that he owed nothing. In the present case the petition seeks to set aside a judgment rendered in the court of ordinary, on the ground of fraud, and thereby to annul the judgment. Plaintiff's right to set aside a judgment on account of fraud can not be more sacred than the right to set aside a judgment for money which had already been paid, and thereby compel the debtor to pay a second time. Not only is a judgment presumed to be correct and in accordance with law, but in order to set a judgment aside it must appear that the complaining party was prevented from making the defense by fraud practiced upon him; and even if the fraud arises from the act of the adverse party, it must be unmixed with negligence on his own part. To the same effect is the ruling in *Bank of Doerun* v. *Fain*, 148 *Ga.* 799 (98 S. E. 467), that "A party can not successfully ask for relief in equity to set aside a judgment at law against him, on the ground that he failed or omitted to make a legal defense, unless he was prevented by fraud or accident, unmixed with any fraud or negligence by himself, from setting up such defense." There is no allegation in the petition that Mrs. Beddingfield made any statement of any kind to petitioner or any of its agents, until after the judgment setting aside the year's support. So the plaintiff can not say it was prevented from making its legal defense by anything she might have said or done. It was prevented from making its defense by reason of the fact that it had no agent in Georgia to inform it of the publication of the citation, and so far as appears from the record it was not even a subscriber to the official publication in a county where it had an interest of $9,000.

In the petition some of the statements are attributed to J. B. Beddingfield, the administrator. These, of course, have no binding effect upon Mrs. Beddingfield, the widow and applicant for a year's support. As said in *Lanier* v. *Nunnally*, 128 *Ga.* 358 (57 S. E. 689) : "While equity has jurisdiction to set aside a judg-

ment obtained through the perpetration of a fraud, it must be made to appear, in an application made for this purpose, that the fraud was perpetrated by the adverse party, or his counsel or agents." In the *Lanier* case, Mr. Justice Cobb, delivering the opinion of the court, says: "The purpose which a court of equity had, when it first exercised jurisdiction to annul a judgment obtained by fraud, was to prevent the adverse party from obtaining an unconscionable advantage as the result of a judgment at law. One who has obtained a judgment at law according to the prescribed method, and who is not chargeable with any conduct which would amount to fraud or imposition upon the adverse party in relation to the judgment, will not be interfered with by a court of equity for the mere reason that a stranger perpetrated a fraud which prevented the other party to the judgment from interposing a defense. The remedy of the party who is the victim of such fraud at the hand of a stranger to the plaintiff is not by resort to a court of equity to have the judgment set aside, but by seeking proper redress against him who perpetrated the fraud." And so it seems in this case, that if a fraud was perpetrated by the administrator, who from the allegations of the petition is presumably under a good and sufficient bond, the remedy of the petitioner is by suit upon the bond of the administrator, and not by motion to set aside the judgment awarding a year's support to the widow of the deceased. However, we do not think that the allegations are such as to show that the applicant for year's support obtained an unconscionable advantage over petitioner, or that anything said or done by her prevented the bank from presenting its objections by caveat at the hearing upon the application, and before the return of the appraisers was made the judgment of the court. As said in *Lanier* v. *Nunnally*, supra: "The purpose of equity, as above stated, is to relieve the victim of a fraud from an unconscionable advantage which the perpetrator has obtained. It is in the nature of a penalty which the court inflicts, and no court ever inflicts a penalty upon an innocent person." The rule laid down in the case cited was referred to approvingly in *Johnson* v. *Driver*, 108 *Ga.* 595, 598 (34 S. E. 158).

It is plain from the allegations of the petition that the real reason why the petitioner did not file a caveat to the allowance of the year's support in this case was because of its own negligence in not having itself kept apprised of the pendency of the application and

the citation. It is to be assumed, from the allegations of the petition, that if plaintiff had known that objections were in order, it would have objected before the rendition of the judgment it seeks to set aside. However, nothing is better settled than that a court of equity does not relieve a person from a judgment which he might have prevented but for his own negligence. *Rogers* v. *Kingsbury,* 22 *Ga.* 60; *Vaughn* v. *Fuller,* 23 *Ga.* 366; *Simmons* v. *Martin,* 53 *Ga.* 620; *York* v. *Clopton,* 32 *Ga.* 362; *Hill* v. *Harris,* 42 *Ga.* 412; *Taylor* v. *Sutton,* 15 *Ga.* 103; *Smith* v. *Hornsby,* 70 *Ga.* 552. In *Burgin* v. *Bowman,* 142 *Ga.* 800 (83 S. E. 935), this court held that where the defendant was clearly lacking in diligence in making his defense, the petition was without merit and no right to relief shown. The lower court was held to have erred in overruling a general demurrer and refusing to dismiss the case. In *Peterson* v. *Martin Furniture Co.,* 144 *Ga.* 316 (86 S. E. 1099), the court was dealing with a case where, as in the present instance, the petitioner was lacking in diligence. It was held that the petition was properly dismissed by Judge Gilbert, then presiding in the superior court. In this case, Peterson had purchased furniture on the installment plan, and he alleged that after he had overpaid the amount which he had contracted to pay, the defendant sued out an attachment against him for the purchase-money, and while he was confined in jail for a criminal offense judgment was rendered on the attachment case in favor of the plaintiff. He alleged that he had a good defense, to wit, payment, and was prevented from making it on account of being in jail, which fact was known to the defendant and the court rendering judgment, and was a fraud on petitioner. But this court held: "The plaintiff's petition was filed on March 31, 1914, more than a year after the judgment was rendered and the sale made which he seeks to have set aside. It is true that he alleges that he was in jail when the judgment was rendered and when the sale was made, and that he remained in jail for a long time thereafter; but it is not disclosed when it was that he was released from jail. It clearly appears from the petition that the plaintiff in attachment was guilty of no fraud or wrong in procuring the judgment, and the defendant in attachment (plaintiff here) fails to explain why he did not earlier prosecute the present action. There was no error in dismissing his petition on demurrer." See also *Gray* v. *Georgia Loan & Trust Co.,* 166 *Ga,* 445 (143 S. E. 501),

The error of the court in not sustaining the demurrer and dismissing the petition rendered the further proceedings in the case nugatory.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*